IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRAPHIC PALLET AND TRANSPORT, INC., )
JOHN KRAWISZ, CHRISTY KRAWISZ, )
 )
      Plaintiffs, )
 )
  v. ) No. 11 C 9101
 )
BALBOA CAPITAL CORP., )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Graphic Pallet and Transport, Inc., John Krawisz, and Christy Krawisz filed this lawsuit against defendant Balboa Capital Corp. in the Circuit Court of Will County, Illinois alleging that Balboa had misrepresented the terms of three leases executed by Graphic and guaranteed by the Krawiszes. The complaint consists of four counts, all pleaded in the alternative: rescission of contract (Count I), common law fraud (Count II), mistake (Count III), and violation of Califorina's Unfair Competition Law ("UCL"), Business and Professions Code Section 17200 (Count IV). The case was removed to this court. Defendant has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.

According to the complaint, in March 2008, Balboa, a California corporation, entered into discussions with Graphic, an

Illinois corporation, about leasing a nailing machine and a semi-truck. Plaintiffs allege that Balboa's representative, Kenny Segin, indicated that Balboa would agree to finance the purchase of the equipment in exchange for thirty-six monthly payments. Plaintiffs also allege that Segin represented that at the end of the lease terms, plaintiffs would have an opportunity to purchase the equipment for one dollar. Based on these representations, Graphic entered into two lease agreements, one for the nailing machine (the "first lease agreement") and one for the semi-truck (the "second lease agreement"), and the Krawiszes signed personal guarantees.

Despite Segin's representations or the Krawiszes' understanding, the lease agreements tell a different story. Under the terms of the lease agreements, which are two pages long each, there are two possible end of term options.[1] Paragraph 16 of the lease terms describes the two end of term options: "$1.00 or $1.01 buyout" and "Fair Market Value Purchase Option." (Pls.' Complaint, Ex. A) (DN 2-1); (Def.'s Mot. to Dismiss, Ex. 1) (DN 10-1). If the

---

[1] Plaintiffs attached the first lease agreement to their complaint but not the second. Defendant submitted the second lease agreement with its motion to dismiss. Both lease agreements contain the same terms. Because plaintiffs refer to the second lease agreement in their complaint and the agreement is central to their claims, defendant's exhibit will be considered part of the pleadings. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

former is indicated in the end of term section on the front of the lease, then the lessee "shall purchase the equipment for that amount" at the end of the lease term. *Id.* By contrast, if the latter option is indicated, then the lessee has the opportunity to purchase the equipment "for its fair market value" as determined by Balboa in its "reasonable judgment," after giving notice prior to the end of the lease term. *Id.* According to the end of term section on page one of the first and second lease agreements, the fair market value purchase option governs both contracts.

In February 2010, Segin contacted Graphic again to discuss the possibility of Balboa leasing a saw to Graphic. During the discussions, Segin allegedly represented once more that Graphic would have the opportunity to purchase the saw for one dollar at the end of the lease term. As with the first two lease agreements, plaintiffs allege that they entered into the lease agreement for the saw (the "third lease agreement") based on Segin's representations. The third lease agreement differs from the first and second agreements in that page one of the third lease does not refer to an end of term "option." Instead, paragraph 16 on the second page of the lease describes only a fair market value purchase term.[2]

---

[2] While the third lease agreement differs from the first two leases, plaintiffs' complaint does not distinguish between the first two leases and the third, nor does it set forth any claims based on the difference between the contracts. Plaintiffs also fail to raise any argument based on the difference between

According to plaintiffs, Graphic made monthly payments pursuant to the three agreements through April 2011, when the first and second lease agreements were set to terminate. Plaintiffs do not allege that Graphic notified Balboa of an intent to exercise the fair market value option described in the lease agreements. Instead, plaintiffs claim that they contacted Segin after noticing that Balboa was still withdrawing funds in May 2011, for the first and second lease agreements, even though those agreements ended in April 2011. Segin allegedly confirmed that the first and second agreements contained one-dollar buyout provisions and told plaintiffs that he would have Balboa issue a refund to Graphic for the post-April 2011, payments. Balboa did not issue a refund to Graphic, however, and Segin stopped returning plaintiffs' phone calls. Other Balboa representatives informed Graphic that the agreements were governed by a fair market value purchase option and that, according to the terms of the lease agreements, because Graphic did not return the equipment or give notice of an intent to exercise the fair market value purchase option, plaintiffs would have to continue making monthly payments for at least an additional twelve months and then pay the fair market value of the nailing machine and the semi-truck.

---

the lease agreements in their response to defendant's motion to dismiss. As such, I do not address what impact, if any, the lack of an end of term "option" in the third lease might have on plaintiffs' claims.

Graphic sued Balboa in state court, and Balboa removed the case to this court. Jurisdiction was properly based on the diversity of citizenship between the parties. The parties agree that California law applies to the lease agreements.

II.

To survive a Rule12(b)(6) motion, a complaint generally "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While a "short and plain statement of the claim" is all that is required by Federal Rule of Civil Procedure 8, "[i]f the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief." *Thompson v. Ill. Dept. of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Further, a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992). In addition, where a plaintiff alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

5

III.

The gravamen of defendant's argument is that plaintiffs' claims are precluded by the parol evidence rule. According to defendant, because the parol evidence rule would exclude evidence of oral representations that were contrary to the unambiguous written provisions of the lease agreements, plaintiffs cannot state a claim upon which relief can be granted. In addition, defendant argues that plaintiffs' assertions that they relied on Segin's alleged misrepresentations are facially implausible and are further grounds for dismissal under *Iqbal*. I do not reach defendant's second argument because I find that the parol evidence rule applies and is dispositive.

Generally, the parol evidence rule "prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 7 Cal. Rptr. 2d 718 (Cal. App. Ct. 1992) (citing *Tahoe Nat'l Bank v. Phillips*, 4 Cal.3d 11, 23, 92 Cal.Rptr. 704 (Cal. 1971)). "An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." *Id.* (citation omitted). Therefore, "the parol evidence rule does not 'render inadmissible proof of contemporaneous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the circumstances justify an inference

6

that it was not intended to constitute a final inclusive statement of the transaction.'" *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) (quoting *Ellis v. Klaff*, 96 Cal.App.2d 471, 476 (Cal. App. Ct. 1950)).

In California, the general parol evidence rule is further defined by statute. *See* Cal. Code Civ. Proc. § 1856 (hereafter "§ 1856"). For example, pursuant to § 1856 certain extrinsic evidence is allowed where a mistake is at issue, § 1856(e), or where fraud is alleged. § 1856(g). However, the exceptions created by the statute are not without limits. For example, a mistake must be a "mistake of objective existing fact" or a mistake of law, and not simply a "subjective misinterpretation of the contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1421, 49 Cal. Rptr. 2d 191 (Cal. App. Ct. 1996). In addition,

> There is a line of cases ... emanating from *Bank of America etc. Assn. v. Pendergrass* [(1935)] 4 Cal.2d 258 [48 P.2d 659], which stands for the proposition that parol evidence to show fraud is inadmissible to show an oral promise directly at variance with a term of the contract." (*Munchow v. Kraszewski* (1976) 56 Cal.App.3d 831, 836 [128 Cal.Rptr. 762], fn. omitted.) Thus, the "fraud exception" to the parol evidence rule is not

> applicable unless the false promise is independent of, or consistent with, the written instrument. (*Continental Airlines, Inc. v. McDonnell Douglas Corp., supra*, 216 Cal.App.3d at p. 419.)

*Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 868 n. 3, 118 Cal. Rptr. 2d 770 (Cal. Ct. App. 2002). Similarly, consistent with § 1856, California courts have applied the parol evidence rule "if the following two inquiries are answered affirmatively: 1) was the writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and 2) is the agreement susceptible of the meaning contended for by the party offering the evidence?" *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 977 (N.D. Cal. 2006) (quoting *Wang*, 97 Cal.App.4th at 873).

Before analyzing each of plaintiffs' four counts, I must determine if the parol evidence rule applies generally by employing the two part test described in *Iconix*, 457 F. Supp. 2d at 977. First, the lease agreements appear on their faces to be fully integrated. "In contract law, 'integration' means the extent to which a writing constitutes the parties' final expression of their agreement." *Esbensen v. Userware Int'l, Inc.*, 11 Cal. App. 4th 631, 636, 14 Cal. Rptr. 2d 93 (Cal. Ct. App. 1992). Here, the lease agreements each contained an integration clause declaring the

agreement to contain the entire agreement between the parties and stating that the agreement "may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both [parties]." (Compl., Exs. A, B) (DN 2-1); (Def.'s Mot. to Dismiss, Ex. 1) (DN 10-1). Plaintiffs do not allege any facts to support a claim that the lease agreements were not fully integrated pursuant to the integration clauses. In fact, in their response to the motion to dismiss plaintiffs do not even address the integration clause or argue that it should not be considered binding in this case.

However, the inclusion of an integration clause is only one factor in the analyzing whether a contract is fully integrated. California courts also consider three other factors in deciding whether a written contract is integrated: (1) "the language and completeness of the written agreement"; (2) whether the alleged oral agreement contradicts the terms of the written agreement; and (3) whether "the oral agreement might naturally be made as a separate agreement." *Sicor*, 51 F.3d at 859 (citation omitted). Turning to the first of the additional factors enumerated in *Sicor*, the written lease agreement is detailed and specifies "the full range of the parties' obligations" in fulfilling the contract. 51 F.3d at 859. In particular, the agreement states that Balboa will provide the equipment specified in the schedule to the lease agreement and that Graphic will make payments as detailed in the

agreement. (Pls.' Compl., Exs. A, B); (Def.'s Mot. to Dismiss, Ex. 1). Other relevant details contained in the agreement include the mechanics of payment by the lessee, which party bears the costs of delivery, and the fact that equipment is leased "as-is." *Id.* Plaintiffs do not allege any facts to suggest that the agreements are not complete nor have they pleaded facts to support an inference that Segin's statements explained the open "fair market value" term. In fact, the written contract defines the very terms that are at issue in this case. Plaintiffs allege that when they were discussing the first and second lease agreements with Segin he told them that the term "fair market value purchase" meant that they would have the opportunity to buy the leased equipment for one dollar at the end of the lease term. When discussing the third lease agreement, plaintiffs allege that Segin made the same representation. But the terms of the first two leases define and differentiate between a one-dollar buyout option and a fair market value option. The third lease defines the end of term provision, though without differentiating a one-dollar buyout. To this extent, the second *Sicor* factor also indicates that the parties intended the written contract to be integrated. Finally, as for the third factor, the parties would be expected to reduce to writing the terms governing the end of the lease term, and they have done so. I therefore find that the contracts are fully integrated.

Turning to the second prong of the *Iconix* test, I must determine whether the oral agreement contradicts the terms agreed to in the writing. Looking at the plain language of the terms, the alleged oral representations of Segin are directly contradicted by the written terms of the lease agreements. The plain language of two of the leases indicates that the fair market value was not equal to one dollar but would be determined by Balboa in its "reasonable judgment." The third lease agreement describes an end of term provision in which plaintiffs can purchase the equipment for the fair market value, and further defines "fair market value" as an amount to be determined by defendant in its "reasonable judgment." That the third lease does not also describe a one-dollar buyout option does not alter my conclusion. As alleged in the complaint, Segin's statement that plaintiffs could purchase the saw for one dollar at the end of the lease term contradicts the plain language of the contract, which indicates that the value of the equipment would be determined by defendant at the end of the lease term. Therefore, Segin's alleged representations contradict the written agreement, and the parol evidence rule applies.

That the parol evidence rule applies, thus generally barring evidence of Segin's alleged representations, does not end my analysis because plaintiffs argue that they have sufficiently pleaded circumstances that would fall within the exceptions to the parol evidence rule under §§ 1856(e) and (g). Accordingly, I will

11

consider whether an exception applies to any of the counts in plaintiffs' complaint.

In count I, plaintiffs seek rescission of the lease agreements due to fraud. Relatedly, count II is a claim for common law fraud. Because both counts involve alleged fraud, I will consider them together. As discussed above, § 1856 creates an exception to the parol evidence rule where a plaintiff alleges fraud. However, California courts have interpreted this exception narrowly, and the exception only applies where the alleged fraud is independent of or consistent with the written agreement. *See Wang*, 97 Cal. App. 4th at 868 n. 3. Plaintiffs have alleged that defendant made fraudulent representations to induce them to enter into the lease agreements. As previously discussed, the statements Segin allegedly made to plaintiffs, as pleaded in the complaint, are inconsistent with the written agreement. Similarly, because the end of term provisions are defined by each of the three lease agreements, the alleged fraud is not independent of the integrated, written agreements. Therefore, the fraud exception cannot be applied in this case.

Plaintiffs alternatively seek to void the lease agreements on the basis that the parties, along with Segin, mistakenly believed that the agreements were subject to a one-dollar buyout option. While § 1856 allows parol evidence where mistake is at issue, the exception does not apply here. Under California law, a "mere

subjective misinterpretation" is not considered a mistake for purposes of contract law. *Hedging Concepts*, 41 Cal. App. 4th at 1421 ("[I]n the interest of preserving some reasonable stability in commercial transactions, the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of, or to have misunderstood, the provisions of the contract.") (quoting 14 California Jurisprudence Third, Contracts, section 72, page 271). The complaint here indicates that plaintiffs questioned Segin about the end of term provision, which was designated as the "fair market value" option on the front of the lease agreement (Compl., at ¶ 9) but the complaint and plaintiffs' briefing ignores the fact that the fair market value option is clearly distinguished from a one-dollar buyout option in paragraph 16 of the first two contracts and defined in all three contracts. At most, this is a case of "subjective misinterpretation." As such, plaintiffs have not shown that any exception to the parol evidence rule under §§ 1856(e) and (g) applies.

Plaintiffs next argue that the California Commercial Code, which governs the parties' contract, also permits extrinsic evidence of the subsequent conduct of the parties to demonstrate the contracts' intended meaning. The California Commercial Code bars evidence of prior or contemporaneous oral agreements to

contradict an integrated, written contract, but allows that such an agreement "may be explained or supplemented" by "course of dealing, course of performance, or usage of trade" and by certain "evidence of consistent additional terms." Cal. Comm. Code § 2202. Relying on *Sicor*, 51 F.3d at 857, plaintiffs maintain that Segin's statements created an "ambiguity" in the terms of the lease agreements and that consideration of defendant's "subsequent conduct" would be appropriate in this case. There are two problems with plaintiffs' reliance on *Sicor*. First, the *Sicor* court found a term in the written contract itself was ambiguous. *Id.* at 856. Here, plaintiffs try to create an ambiguity with extrinsic evidence even though the relevant terms of the written contracts are not ambiguous. Second, "course of dealing, course of performance, or usage of trade" are terms of art that are defined by statute. *See* Cal. Comm. Code § 1303. In *Sicor*, the "course of performance" evidence deemed admissible by the court involved the plaintiff's attempt to perform its obligations under the contract and the defendant's acquiescence in the plaintiff's efforts. 51 F.3d at 857; *see also* Cal. Comm. Code § 1303(a)(2). In the case before me, plaintiffs seek to introduce evidence of Segin's comments which, regardless of when they were made, do not constitute course of performance, course of dealing, or usage of trade as those terms are defined by the statute. Plaintiffs cannot introduce extrinsic evidence of Segin's alleged comments under either § 1856 or § 2202,

14

and therefore cannot state claims for fraud or mistake under the facts as alleged in their complaint.

Finally, plaintiffs argue that their claim under the UCL, § 17200, is not barred by the parol evidence rule and also does not require reasonable reliance. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. California courts have interpreted the UCL to embody three distinct "varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554, 62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) (citation omitted). "An act can be alleged to violate any or all of the three prongs of the UCL." *Id.* Plaintiffs do not clearly indicate under which prong of the UCL they are bringing the § 17200 claim, and so I have assumed that they are alleging that defendants have violated all three prongs of the UCL. Addressing plaintiffs' claim under the unlawful prong of the UCL, this claim fails. Because the unlawful prong of the UCL "borrows violations of other laws [. . .] a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Id.* Plaintiffs have not stated a claim for a violation of another law, as discussed above; therefore, plaintiffs cannot succeed under the unlawful prong of the UCL. *See Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1161 (C.D. Cal. 2009) (holding that UCL claim based on deceit was barred by the parol

evidence rule where the underlying cause of action was also barred by the parol evidence rule).

As to whether plaintiffs have stated a claim under the other two prongs of the UCL, defendant argues that plaintiffs have not alleged any public harm as required under California law. To state a claim under the fraudulent prong of § 17200, a plaintiff must allege that members of the public are likely to be deceived. *Horne*, 660 F.Supp.2d at 1162 (citing *Wang*, 97 Cal. App. 4th at 871). Similarly, to state a claim under the unfair prong of the § 17200, a plaintiff must allege conduct negatively affecting consumers or violating public policy. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473, 49 Cal. Rptr. 3d 227 (Cal. App. Ct. 2006) (citations omitted). In defining the limits of claims for unfair or fraudulent business practices, California courts have refused to allow commercial parties to use § 17200 to resolve disputes over their economic relationships. *In re ConocoPhillips Co. Service Station Rent Contract Litigation*, No. M:09-cv-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. April 13, 2011) (Whyte, J.); *see also In re Webkinz Antitrust Litigation*, 695 F.Supp.2d 987, 999 (N.D. Cal. 2010) (concluding that claim brought under § 17200 by small retailers against a toy distributor "is invalid as it fails to state a connection to the protection of the general public"). As such, plaintiffs have failed to assert a claim under the unfair or fraudulent prongs of § 17200.

IV.

For the foregoing reasons, defendant's motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 30, 2012